```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION
```

JOHN E. SANSBURY, individually and
o/b/o his minor children, Michelle
Sansbury and Catherine Sansbury,

           Plaintiff,

vs.                              Case No.   2:04-cv-509-FtM-33DNF

DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, an Agency of the State of
Florida, MARY SZYREK, DANIEL
SANSIVERI, RUBY JEWEL EDDINGS, MARY
SOTH, C.A.R.E., INC., a domestic
corporation,

           Defendants.
_____

## ORDER

This matter comes before the Court on Defendants Department of Children and Family Services(DCF), Szyrek, Sansiveri, and Eddings Motion to Dismiss Amended Complaint and for Remand to State Court (Doc. #45).  Plaintiff has filed a response in opposition to Defendants' motion (Doc. #52).

### I. Facts

In his complaint, Sansbury alleges that Defendants Szyrek Sansiveri, and Eddings (Defendants)[1] —all employees of the DCF— acted negligently, intentionally, and maliciously in the course of conducting separate investigations into both Sansbury and Jimmy

---

[1] Sansbury makes similar allegations as to each defendant, i.e. negligence, intentional misrepresentation, malice; so throughout the remainder of the order, instead of referring to specific defendants, the Court will simply attribute the action(s) to defendants.

Montgomery —Sansbury's estranged wife's live-in boyfriend (Doc. #40 at 10).[2] See generally (Doc. #40).

In claiming malicious conduct, Sansbury alleges that the DCF employees fabricated stories to cover-up mistakes stemming from their investigation. (Doc. #40 at 26). According to Sansbury, some of these fabrications included: (1) concocting non-existent statements by Sansbury's daughter, e.g., "a long time ago when she was 6 yrs old her [d]addy put his finger in her mouth to choke her and put his weenie in her mouth...." (Doc. #40 at 9-10) and; (2) claiming that a report —which Sanbury alleges is fictional— existed indicating "some evidence of sexual abuse by the father [Sansbury]". (Doc. #40 at 8-9).

While Sansbury also alleges negligence in his investigation, the majority of Sansbury's negligence allegations center on the DCF's investigation into the alleged abuse by Montgomery. In pointing out specific instances of negligence, Sansbury principally identifies negligence in the form of omission. Most of these alleged omissions take the form of failures to interview. Pointing to some of the failures to interview, Sansbury identifies Defendants' failure to interview him, failure to interview one of the children's teachers, and failure to interview a county sheriff

---

[2] It appears that the DCF investigation into Montgomery ended with a finding of no abuse. (Doc. #40 at 13). As to the DCF investigation into Sansbury, Sansbury's complaint does not indicate the outcome.

who was conducting a related investigation. (Doc. #40 at 13). Along with these allegations, Sansbury points to further steps that Defendants could have taken to ascertain what Sansbury takes as fact –that Montgomery abused his two daughters.

With this alleged malicious, intentional, and negligent behavior as his basis, Sansbury brings two sets of claims: (1) state tort claims; and (2) 42 U.S.C. § 1983 claim. (Doc. #40 at 2). Forming the basis of his § 1983 claim, Sansbury alleges violations of his constitutional right to raise a family (Doc. #40 at 5) –the Court interprets this averment as alleging a violation of Sansbury's right to intimate association. Although the complaint is unclear, Sansbury appears to allege that the violation of his right to intimate association was an outgrowth of Defendants' investigation. (Doc. #40 at 5). Making this argument, Sansbury appears to allege the violation of his right to intimate association took two forms. First, Sansbury alleges that his right to intimate association was violated when Defendants temporarily deprived him of custody during the course of their investigation into abuse allegations. (Doc. #40 at 13). Second, Sansbury appears to allege that the reports stemming from the Defendants' investigation were referenced at the Sansbury children's custody hearings and that these reports adversely affected his case for custody of his children –resulting in denial of custody. Based on

these allegations, Sansbury seeks both monetary and injunctive relief.

## II. Standard

In deciding a motion to dismiss, the Court accepts the facts of the complaint as true and views them in the light most favorable to the non-moving party. See Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004)(citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). Dismissal of a count for failure to state a claim is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 75 Acres, LLC v. Miami-Dade County, Fla., 338 F.3d 1288, 1293 (11th Cir. 2003)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Defendants have raised the defense of qualified immunity, as they have been sued in their individual capacities under 42 U.S.C. § 1983. The qualified immunity defense completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003). Because questions of qualified immunity must be resolved at the earliest possible stage in litigation, Gonzalez, 325 F.3d at 1233 (quoting Hunter v. Bryant, 502 U.S. 224,

227 (1991)(per curiam)), qualified immunity may be decided on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure where the complaint "fails to allege the violation of a clearly established right." Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001).

A right is clearly established where the law has been concretely developed in such a way that all reasonable actors, serving in the place of the defendant, would recognize their actions as violating federal law. Harris v. Coweta County, Ga., 21 F.3d 388, 393 (11th Cir. 1994)(citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). When evaluating qualified immunity, courts "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999). "If a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff has failed to allege the violations of a 'clearly established' right." GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998). Therefore, in order to survive the motion to dismiss, Sansbury must have alleged a violation of his constitutional rights. Conn, 526 U.S. at 290.

Further, § 1983 actions are subject to a heightened pleading standard. Explaining this standard, in <u>Dalrynple v. Reno</u>, 334 F.3d 991 (11th Cir. 2003), the Eleventh Circuit declared:

> In examining the factual allegations of the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity. *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998). In such cases, the complaint must allege the relevant facts "with some specificity." Id. "More than mere conclusory notice pleading is required. . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984); *see also Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995)(holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity"). Moreover, in reviewing a motion to dismiss, we need only accept "well-pleaded facts" and "reasonable inferences drawn from those facts." *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). "Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001). We must also keep in mind the fact that "we generally accord . . . official conduct a presumption of legitimacy." *United States Dep't of State v. Ray*, 502 U.S. 164, 179, 112 S. Ct. 541, 550, 116 L. Ed. 2d 526 (1991).

<u>Id.</u> at 996.

### III. Analysis

As mentioned above, to state a valid § 1983 claim, Sansbury must allege a violation of a constitutional right. Here, Sansbury alleges a violation of his right to intimate association. Engaging in its analysis and before determining whether the law was clearly

established, the Court must find that Defendants' actions did indeed constitute a violation of Sansbury's rights to intimate association.  Doing so, the Court must first establish that the right to intimate association is an actionable right.  Following this determination, the Court must next examine whether the Defendants' actions constituted a violation of that right.  Only after these two initial steps are complete will the Court determine whether the right was clearly established —disabling the Defendants' ability to assert the defense of qualified immunity.

**A. Existence of a Recognized Right**

The Court identifies the right to intimate association as a well-recognized constitutional right.  Intimate association is one of two constitutionally recognized rights of association –the other being the right to expressive association. See Caruso v. City of Cocoa, 260 F. Supp. 2d 1191, 1206 (M.D. Fla. 2003)(recognizing the two forms of association).  In differentiating the two, the Supreme Court reasons that freedom of expressive association is protected by the First Amendment, while freedom of intimate association is a liberty interest protected by the substantive due process component of the Fifth and Fourteenth Amendments to the Constitution. See Wyke v. Polk County Sch. Bd., 898 F. Supp 852, 856 (M.D. Fla. 1995)(citing Roberts v. United States Jaycees, 468 U.S. 609 (1984)).  Since state, not federal, officials are accused of the alleged violations, the Court analyzes this issue pursuant to the

substantive due process feature of the Fourteenth Amendment. With the right established, the Court is prepared to proceed with its substantive due process analysis, which entails determining whether Defendants' actions constituted a violation of Sansbury's right to intimate association.

**B. Presence of a Constitutional Violation**

Under substantive due process analysis, there exists one overriding theme: "the touchstone of due process is protection of the individual against arbitrary action of government." County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)(quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). Expanding on what constitutes arbitrary action, in Lewis, the Court propounded that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Id. (citing Collins v. Harker Heights, 503 U.S. 115 (1992)). Attempting to develop a more concrete standard, the Court developed the "shock the conscience" axiom. Collins, 503 U.S. at 128. In defining what shocks the collective conscience, the Court annunciated that "liability for negligently inflicted harm is categorically beneath the constitutional due process threshold." Daniels v. Williams, 474 U.S. 327, 328 (1986). Thus, mere negligence does not amount to a constitutional violation. Instead, Defendants' behavior must shock the conscience.

Looking at the present facts, Sansbury accuses Defendants of negligent and malicious behavior. As mentioned in the earlier rendition of the facts, Sansbury's accusations reference two separate investigations —one into Sansbury and the other into Montgomery. To simplify the analysis, the Court will separately address the Sansbury and Montgomery investigations.

*1. Sansbury Investigation*

Prompting the investigation into Sansbury, the DCF —through an abuse hotline— received a tip that Sansbury was abusing his children. (Doc. #40 at 19). After receiving the call, the Defendants began their investigation. During the course of the investigation -as indicated in Defendants' report- the investigators were apprised of a 1999 molestation case apparently involving an accusation of sexual abuse against Sansbury. (Doc. #40 at 10). Further, Defendants also obtained statements from Sansbury's daughter indicating that Sansbury had sexually abused her. (Doc. #40 at 9). Sansbury claims that these statements were fabricated. (Doc. #40 at 9). Notwithstanding Sansbury's allegations that the statements were fabricated, the Defendants still had two additional inculpating pieces of information: (1) the abuse hotline tip; and (2) the 1999 molestation case —a fact that buttressed the allegations of abuse. Considering all these factors, the Court cannot say that a reasonable DCF officer would have acted any differently then the Defendants did. Accordingly,

the Court finds that the Defendants actions do not rise to the level of negligence let alone shock the conscience –the required threshold.

However, this finding does not end the Court's inquiry. In his complaint, Sansbury alleges more then negligence. Sansbury also accuses several defendants of maliciously and intentionally fabricating facts —such as his daughter's statements— in their report. Taken as true, such behavior inches closer to shocking the conscience.

Unlike Sansbury's negligence based allegations, the Court is hesitant to find that such averred actions do not shock the conscience. Despite this finding, the Court is still compelled to dismiss Sansbury's claims. In dismissing, the Court points to Sansbury's failure to properly plead the causation element of his claims. In a § 1983 case –like in any other tort actions– the plaintiff is required to plead not only that the defendant acted improperly, but that defendant's actions caused the plaintiff's damages. In <u>Jackson v. Sauls</u>, 206 F.3d 1156 (2000), the Eleventh Circuit —citing Supreme Court precedent— informed that common law principles of causation apply to § 1983 claims. Expanding, the Supreme Court explained that "[f]or damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were

reasonably foreseeable consequences of the tortious acts or omissions in issue." Id. at 1168.  Resultantly, the alleged conscience shocking conduct must be the proximate cause of the constitutional deprivation.  Thus here, Sansbury is required to properly plead that the violative behavior caused the constitutional violation –denial of right to intimate association.

In instituting the action against defendants, Sansbury implicitly alleges that Defendants caused the deprivation of his intimate association with his daughters. However, beyond vague and conclusory allegations that Defendants caused the deprivation of his rights, Sansbury provides no detail.  In light of the heightened pleading standards required in § 1983 cases and the Supreme Court's desire to spare government employees the strain of discovery and trial[3] without sufficient basis, the Court dismisses Sansbury's complaint.

*2. Montgomery Investigation*

Addressing the Montgomery investigation, Sansbury claims that Defendants could and should have taken additional steps during the course of their investigation into Montgomery.  As mentioned above, such claims sound in negligence.  Since mere negligence does not amount to a constitutional violation, Sansbury fails to allege a valid § 1983 claim.

---

[3] See Harlow, 457 U.S. at 818.

**C. State Tort Claims**

The Court is exercising supplemental jurisdiction over Sansbury's state claims. Pursuant to 28 U.S.C. § 1367(c), the Court has discretion to dismiss state claims when all claims over which it has original jurisdiction have been dismissed. Presently, the Court is dismissing Sansbury's § 1983 claim —the only claim over which the Court has original jurisdiction. Accordingly, in its discretion, the Court dismisses Sansbury's state law claims.

**D. Motion to Remand**

Defendants have included a petition to remand this action. Since the case was not removed from state court, the Court cannot remand it to state court. Accordingly, Defendants' motion to remand is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion to Dismiss Complaint (Doc. #45) is GRANTED and this case is dismissed without prejudice.

(2) Defendants' Motion to Remand (Doc. #45) is DENIED.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>4th</u> day of December, 2005.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record