# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

JOHN E. SANSBURY, individually and obo
his minor children, Michelle Sansbury and
Catherine Sansbury,

                        **Plaintiff,**

-vs-                                        Case No.  2:04-cv-509-FtM-99DNF

DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, an agency of the State
of Florida, MARY SZYREK, DANIEL
SANSIVERI, RUBY JEWEL EDDINGS,
and MARY SOTH, individuals,

                        **Defendants.**

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS AMENDED COMPLAINT (Doc. No. 62)** |
| **FILED:** | **January 23, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** as to the Federal claims and the District Court not retain supplemental jurisdiction over the state law claims.  Further, that Mary Soth be dismissed from this action.

The Defendants, Department of Children and Family Services, Mary Szyreck, Daniel Sansiveri and Ruby Jewell Eddings moved to dismiss the Second Amended Complaint based upon sovereign immunity, and qualified immunity. The Plaintiffs filed a Response (Doc. 67) and assert that sovereign immunity and qualified immunity were waived.

The District Court entered an Order (Doc. 37) which granted C.A.R.E., Inc.'s Motion to Dismiss and granted Plaintiffs leave to file an Amended Complaint. An Amended Complaint (Doc. 40) was filed on April 19, 2005. The Defendants filed a Motion to Dismiss the Amended Complaint (Doc. 45) which was granted by Order (Doc. 53) entered on December 5, 2005. The Court determined that "[i]n light of the heightened pleading standards required in §1983 cases and the Supreme Court's desire to spare government employees the strain of discovery and trial without sufficient basis, the Court dismisses Sansbury's complaint." (Doc. 53, p. 11). The District Court also determined that the allegations concerning Jimmy Montgomery[1] sounded in negligence and did not amount to a constitutional violation. *Id*. The District Court declined exercising supplemental jurisdiction over the state law claims and dismissed them as well. *Id*. at 12. The Court did not include any language concerning leave to file another amended complaint, nonetheless, without proper leave of court, the Plaintiffs filed a Second Amended Complaint (Doc. 54) on December 15, 2005, which is now the operative complaint. Thereafter, the Defendants filed the instant Motion to Dismiss Amended Complaint (Doc. 62).

---

[1] Jimmy Montgomery is a non-party to this action. He is the boyfriend of the mother of the minor Plaintiffs.

**I. Allegations in the Second Amended Complaint**

The sixty-five page Second Amended Complaint (Doc. 54) is a rambling account of the incidents that occurred. The facts are taken as true for the purposes of this Motion to Dismiss. Many of the paragraphs contain allegations that are repeated throughout the Second Amended Complaint. It is clear that the Plaintiffs failed to comply with Fed.R.Civ.P. 8(a)(2) which requires the pleading to contain "a short, and plain statement" of the claim "showing the pleader is entitled to relief." However, the failure to comply with Rule 8 will not prevent the Court from considering the merits of the Second Amended Complaint.

The Plaintiff, John E. Sansbury is the father and shared custodian of the two minor Plaintiffs, Michele Sansbury and Catherine Sansbury ("minor children"). (Com.[2] ¶1, 9). The Defendants Mary Sczyrek, Ruby Jewel Eddings, and Daniel Sansiveri are child protective investigators for the Department of Children and Family Services ("DCF") which is also a Defendant in this action. (Com. ¶¶2-5, 7). Mary Soth is a counselor for C.A.R.E., Inc. which contracts with the State of Florida for special services. (Com. ¶11h).

The Plaintiffs assert that Sansiveri, Eddings, and Szyrek intentionally misrepresented and acted with malicious intent or with reckless disregard of the rights of the Plaintiffs to deny the Plaintiffs their constitutionally protected right to intimate association between a father and his children, and to protect the children from physical abuse under the Fifth Amendment to the United States Constitution. (Com. ¶10, 11). The Plaintiffs concede that Szyrek, Sansiveri, and Eddings all operated under color of law and performed discretionary duties to make determinations as to reasonable cause regarding allegations of abuse and deciding whether to take children into protective custody. (Com. ¶11, 11c).

---

[2] "Com." refers to the Second Amended Complaint (Doc. 54).

The Plaintiffs contend that Szyrek, Sansiveri, and Eddings willfully, maliciously or with utter disregard for the rights of the Plaintiffs participated in child protective investigations concerning the minor children and made representations in their reports which they knew or should have known were false, misleading, fraudulent or unreasonable, and would lead to foreseeable and severe harm to the Plaintiffs. (Com. ¶11d). The Plaintiffs assert that the Defendants had a duty to conduct a reasonable investigation of each and every complaint made, determine whether reasonable cause existed for a finding of abuse or neglect, prepare a report, and protect the minor children from abuse. (Com. §11d(i)). The Plaintiffs claim that the Defendants knew that their reports were going to be read by others. (Com. ¶11d(ii)).

The Plaintiffs further allege that the investigative reports contained untruths concerning Sansbury abusing one of the minor children[3]. (Com. ¶11d(ii), 32). The Plaintiffs claim that Dr. Beverly Amarumo contacted DCF claiming that she suspected that one of the minor children was being abused which corroborated John Sansbury's allegations that Jimmy Montgomery, the boyfriend of the mother, abused the minor child. (Com. ¶26). Szyrek reported that there were no visible bruises on the minor child, and the Plaintiffs argue that Sczyrek's report was false. (Com. ¶27a). The Plaintiffs claim that Szyrek never spoke to the pediatrician or another witnesses concerning these bruises. (Com. ¶28). The Plaintiffs argue that the investigations and reports finding no abuse by Jimmy Montgomery were false, and the finding that one of the children was not abused was also false. (Com. ¶11f(i)). John Sansbury claims that Jimmy Montgomery was molesting the children and not him, and a proper investigation would have discovered these facts. (Com. §32). These false investigative reports were

---

[3] Although the Plaintiffs include the name of the minor child, the Court prefers to refer to this child for privacy reasons as "one of the minor children."

relied on by other officers and these officers decided not to investigate the missing persons complaint and the child abuse complaint against Jimmy Montgomery by John Sansbury concerning the minor children. (Com. ¶11d(iii), 11e, 11f(ii), 13). Due to the false reports, the children's mother retained custody of the minor children while she was living with Jimmy Montgomery. (Com.¶11d(iii)). Jimmy Montgomery was never fully investigated because of the misrepresentations in the reports. (Com. ¶11e). Mary Soth also relied on these investigative reports, and the misrepresentations in the reports delayed John Sansbury's ability to gain custody of the minor children. (Com. ¶11h). The abuse cases were closed without interviewing the complainant and the corroborating witnesses. (Com. ¶38e). Sansiveri failed to speak with a Charlotte County Sheriff's Officer concerning a related investigation, and he did not ask the results of a polygraph test in another related case. (Com. ¶38a, 38b). Sansiveri, Eddings and Sczyrek never properly interviewed John Sansbury during their investigations. (Com. ¶38c). .

Eddings, Szyrek and Sansiveri also did not obtain reports concerning the mother of the children and her child custody battles in the State of Maryland. (Com. ¶¶ 21-23). In Maryland, the mother accused another father of sexual abuse of her minor child, and the State of Maryland Department of Social Services found the mother's allegations unsubstantiated, and she lost custody of that child. (Com. ¶¶ 21-23).

The Plaintiffs conclude that but for these intentional misrepresentations by the Defendants, the Plaintiffs would not have lost their constitutional right to intimate association, and the children would not have been subjected to continued sexual and physical abuse. (Com. ¶11g). The Plaintiffs assert that if the Court grants qualified immunity to any of the Defendants, then they are alleging that the

Defendants are negligent pursuant to Fla. Stat. §768, and DCF is negligent in its training and supervision of the individual employee Defendants. (Com. ¶20).

The First, Second, and Third Causes of Actions by John Sansbury, Michelle Sansbury, and Catherine Sansbury respectively are against Daniel Sansiveri for intentional misrepresentation. The Plaintiffs claim that Sansiveri's intentional misrepresentations in his investigation caused the investigation to conclude prematurely, caused John Sansbury to lose custody of his children temporarily, and created an unsafe environment for Michelle Sansbury and Catherine Sansbury. (Com. ¶¶44-61). The Fourth, Fifth and Sixth Causes of Action by John Sansbury, Michelle Sansbury, and Catherine Sansbury respectively are against Ruby Jewel Eddings for intentional misrepresentation. The Plaintiffs claim that Eddings' intentional misrepresentations in her investigation caused the investigation to conclude prematurely, caused John Sansbury to lose custody of his children temporarily, and created an unsafe environment for Michelle Sansbury and Catherine Sansbury. (Com. ¶¶62-79). The Seventh, Eighth and Ninth Causes of Action by John Sansbury, Michelle Sansbury, and Catherine Sansbury respectively are against Mary Sczyrek for intentional misrepresentation. The Plaintiffs claim that Sczyrek's intentional misrepresentations in her investigation caused the investigation to conclude prematurely, caused John Sansbury to lose custody of his children temporarily, and created an unsafe environment for Michelle Sansbury and Catherine Sansbury. (Com. ¶¶80-97).[4]

The Thirteenth, Fourteenth, and Fifteenth Causes of Action by John Sansbury, Michelle Sansbury and Catherine Sansbury respectively are against the Department of Children and Family

---

[4] The Tenth, Eleventh and Twelfth Causes of Action are against Mary Soth by the Plaintiffs. Upon review of the docket sheet, no return of service was filed for Mary Soth and Mary Soth is not a part of the pending Motion to Dismiss. the Court will address the status of Mary Soth separately in part III of this Report and Recommendation.

Services for negligence in training and investigation by agents, employees or servants of the Department of Children and Family Services in violation of the Florida Tort Claims Act. (Com. ¶¶116-124). The Plaintiffs allege that this negligence caused harm to the Plaintiffs in the form of loss of custody by John Sansbury, and other costs and expenses to regain custody of Michelle Sansbury and Catherine Sansbury.

The Sixteenth, Seventeenth and Eighteen Causes of Action by John Sansbury, Michelle Sansbury and Catherine Sansbury respectively are against Daniel Sansiveri for violating the Plaintiffs' civil rights. (Com. ¶¶125-135). The Plaintiffs assert that Sansiveri intentionally and maliciously violated the Plaintiffs civil rights as to the care, custody and upbringing of his minor children. The Plaintiffs claim that any reasonable investigator would know that by making misrepresentations in a report, there would be no further investigation, no state protection for the children, and no finding for the court to rely upon in determining custody issues which interfered with the Plaintiffs' rights to intimate association. The Nineteenth, Twentieth and Twenty-First Causes of Action by John Sansbury, Michelle Sansbury, and Catherine Sansbury respectively are against Mary Sczyrek for violating the Plaintiffs' civil rights. (Com. ¶¶136-144). The Plaintiffs allege that Sczyrek's intentional and malicious actions violated Plaintiff's right to the care, custody, and upbringing of his minor children; John Sansbury would have gained custody of his children sooner; and the minor children would not have suffered prolonged sexual and physical harm. The Plaintiffs claim that their right to intimate association would not have been impeded. The Twenty-Second, Twenty-Third and Twenty-Fourth Cases of Action by John Sansbury, Michelle Sansbury, and Catherine Sansbury respectively are against Ruby Jewell Eddings for violating the Plaintiffs' civil rights. (Com. §§145-152). The Plaintiffs contend that her intentional and malicious actions violated their civil right to intimate association and

to be free from physical, and psychological harm. The Plaintiffs also contend that Eddings actions violated their fundamental property and liberty interests.

**II. Standard for Motion to Dismiss**

In deciding a motion to dismiss, the Court must accept as true all factual allegations in the Complaint. *Hughes v. United States*, 110 F.3d 765, 767 (11th Cir. 1997); *Brown v. Crawford County, Ga.,* 960 F.2d 1002, 1010 (11th Cir. 1992). The Complaint must be viewed and all reasonable inferences must be made in favor of the plaintiff. *Sawinski v. Bill Currie Ford, Inc.*, 866 F.Supp. 1383, 1385 (M.D. Fla. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A Complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*). In addition, there is a heightened pleading requirement in §1983 actions when the action is brought against officials acting in their individual capacities. *Washington v. Bauer*, 149 Fed.Appx. 867 (11th Cir. 2005). The heightened pleading standard requires the complaint to contain relevant facts with some specificity and a complaint will be dismissed if the allegations are vague or conclusory. *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003).

**III. Analysis**

In the First through Twelfth Cause of Action, the Plaintiffs are suing the Defendants in their individual capacities for intentional torts which are state law claims. In the Thirteenth through Fifteenth Causes of Action, the Plaintiffs are suing the DCF for negligence in training and supervision.,

which are state law claims. In the Sixteenth though Twenty-Fourth Causes of Action, the Plaintiffs claim that the individual Defendants violated their federal civil rights. The Court will begin its analysis with the federal claims.

### A. §1983 Claims and Qualified Immunity

The Defendants, Sansiveri, Szyreck, and Eddings who are being sued in their individual capacities raise the defense of qualified immunity. They argue that the Plaintiffs failed to articulate a specific civil right that was violated. The Supreme Court has held that the doctrine of qualified immunity consists of a two-part analysis. First the Court must determine whether the plaintiff's allegations, if true, establish that the individual defendant violated a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If the plaintiff meets that burden, then the plaintiff has the burden to show the court that the constitutional right was clearly established. *Hope*, 536 U.S. at 739; *Saucier*, 533 U.S. at 200, *Valdes v. Crosby*, 450 F.3d 1231, 1236 (11th Cir. 2006). The Court must carefully examine the facts alleged and determine whether it would be clear to a reasonable official that his conduct was unlawful in the situation he faced. *Groh v. Ramirez*, 540 U.S. 551, 563 (2004) (citing *Saucier v. Katz*, 553 U.S. at 202)). Qualified immunity shields officials from civil damages who are acting within the scope of their employment and are executing discretionary responsibilities as long as their conduct does not violate clearly established law. *Washington v. Bauer*, 149 Fed. Appx. 867, 870 (11th Cir. 2005). In the instant case, the Plaintiffs allege in the Second Amended Complaint that Sansiveri, Szyreck, and Eddings were operating under color of state law and in their capacity as child protective investigators. (Com. ¶¶3-5). The Plaintiffs fail to assert any arguments that the Defendants were not acting within the scope of their employment as child protective investigators during their investigations. The Plaintiffs admit that Szyrek, Sansiveri,

and Eddings were performing discretionary duties when making their determinations. (Com. ¶11c).

The pleadings allege a constitutional violation of the right to intimate association and a right of minor children to be free from physical and sexual abuse. The Plaintiffs did not set forth any case law which provides that there is a constitutional right on the part of a minor child to be free from abuse. The Court found cases concerning children placed in foster care, and these children do have a Fourteenth Amendment liberty interest in physical safety including to be free from abuse. *See, Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987). However, the Court found no such case law for children living with their natural parents. *See also*, *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189-190 (1989) (There is no affirmative duty to protect a child that is in the custody of his natural father, whereas there is a duty to protect a child in state custody); *Wyke v. Polk County School Board,* 898 F.Supp. 852, 856 (M.D. Fla. 1995) ("[S]tate's failure to protect an individual against private violence does not constitute a violation of the substantive due process clause.") Therefore, the Court will concentrate on the violation of the right to intimate association.

The two distinct forms of association which are granted protection under the United States Constitution are intimate association and expressive association. *Cummings v. DeKalb County*, 24 F.3d 1349, 1354 (11th Cir. 1994), *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). Freedom of expressive association is protected by the First Amendment. *Roberts*, 468 U.S. at 618. Whereas the freedom of association which includes the choice to enter into and maintain certain intimate relationships without undue intrusion by the State is protected by the fundamental right to personal liberty which is protected by the Fourteenth Amendment. *Id*., *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994). *Nero v. Hospital Authority of Wilkes County*, 86 F.Supp.2d 1214, 1229 (S.D. Ga. 1998), *Anderson-Free v. Steptoe*, 970 F.Supp. 945 (M.D. Ala. 1997). The right of intimate

association includes the personal relationships that create and sustain a family, marriage, childbirth, and raising and educating children. *Cummings*, 24 F.3d at 1354.

The familial relationship at issue is the relationship between a father and his minor children. Although the Defendants assert that the Plaintiffs have failed to allege a violation of a civil right, the relationship between a parent and his children is of such an intimate nature that it warrants constitutional protection as a liberty interest. *See*, *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Parents have a protected liberty interest under the Due Process Clause to establish a home and raise their children. *Id*. Weighing against that relationship, is the State's "'profound interest in the welfare of the child, particularly his or her being sheltered from abuse.'" *Doe v. Kearney*, 329 F.3d 1286, (11th Cir. 2003). A court must balance the right to family association with the competing interest of state officials in removing children who may be abused. *Foy v. Holston*, 94 F.3d 1528, 1536-7 (11th Cir. 1996.

Next, the Court must determine if the applicable law was clearly established at the time the individual Defendants acted. The Court must consider the decisions of the Eleventh Circuit, the United States Supreme Court, and the Florida Supreme Court. *Blanco v. City of Clearwater, Fla.*, 9 F.Supp. 2d 1316, 1319 (M.D. Fla. 1998). The Plaintiffs have the burden to show that clearly established law has been violated. *Valdes v. Crosby*, 450 F.3d 1231, 1236 (11th Cir. 2006), *Foy v. Holston*, 94 F.3d at 1532. Officials must be on notice that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). A reasonable official must understand that he is violating a constitutional right . *Id*. "'That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, [citation omitted] but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Id*. (*quoting, Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

A reasonable official must understand that what he is doing violates a right. *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323 (11th Cir. 2006).

The Plaintiffs allege that Sansiveri, Szyreck, and Eddings intentionally and maliciously conducted investigations into allegations of child abuse by John Sansbury and Jimmy Montgomery, and the false reports that they prepared were used to deny John Sansbury the custody of his children and caused his children to be subject to physical abuse. The Plaintiffs have the burden to provide case law showing that Sansiveri, Szyreck and Eddings violated clearly established law. The Plaintiffs failed to cite any cases showing that child protection investigators were liable for violating the constitutional rights of a parent or minor child by intentionally and maliciously investigating allegations of child abuse and making false reports. The Court attempted to locate cases but was unable to find any cases where a state official investigating child abuse claim was liable for violating the civil rights of a parent or child in a factual situation similar to the one at bar. Further, the only case at all analogous found that state officials who investigate cases in an attempt to protect children from abuse "almost never act within contours of 'clearly established law.' *See Frazier v. Bailey,* 957 F.2d 920, 931 (1st Cir. 1992). Thus it is no surprise that state officials who investigate allegations of child abuse and in so doing disrupt a family have been entitled to qualified immunity." *Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996). The Court determines that Sansiveri, Szyreck, and Eddings are entitled to qualified immunity as to the Sixteen through Twenty-Fourth Causes of Action, and recommends that the Motion to Dismiss be granted as to these Causes of Action.[5] These claims are the only federal claims raised. Pursuant to 28

---

[5] The Court also notes that it is not clear in the allegations in the Second Amended Complaint, that the Plaintiffs can prove that the alleged improper investigations were the cause of the custody disputes of John Sansbury. The Plaintiffs allege that these custody disputes are the basis for the violation of the Plaintiffs' constitutional rights to intimate association.

U.S.C. §1367, the District Court has supplemental jurisdiction over the state law claims raised in the First through Fifteen Causes of Action. The Court recommends that the District Court not retain supplemental jurisdiction as the remaining state claims would be more appropriately determined by the state court. However, should the District Court decide to retain supplemental jurisdiction, the Court will address the state court claims.

### B. Claims against DCF

The Plaintiffs allege in the Thirteenth, Fourteenth, and Fifteenth Causes of Action that DCF, through its negligent training and investigation by its employees, caused harm to the Plaintiffs and violated the Florida Tort Claims Act. The Plaintiffs claim that the negligent conduct of DCF caused John Sansbury to lose custody of his minor children, and all of the Plaintiffs lost personal property and incurred expenses to regain the custody by John Sansbury of his children. The Plaintiffs suffered mental anguish and distress. The DCF argues that it is immune from suit based upon sovereign immunity.

The State of Florida and its agencies are generally immune from tort liability pursuant to Article X, Section 13 of the Florida Constitution. However, sovereign immunity for torts has been waived by Fla. Stat. ¶768.28, if a private person would be liable to the claimant under the general laws of the state. *Mosby v. Harrell,* 909 So.2d 323, 326 (Fla. 1st DCA 2005). Certain discretionary or planning level governmental functions remain immune from suit. *Id*. at 326-327. When a governmental entity is sued in negligence, then the court must first determine whether the circumstances would subject a private person to liability under Florida law. *Id*. at 327. The negligent supervision of an incompetent employee and the likelihood or foreseeability that this employee would injure a third person due to the

employment status has long been recognized as a basis for tort liability in Florida. *Storm v. Town of Ponce Inlet*, 866 So.2d 713, 716-717 (Fla. 5th DCA 2004), *Sunshine Birds and Supplies, Inc. v. U.S. Fidelity and Guaranty Company*, 696 So.2d 907, 912 (Fla. 3rd DCA 1997). Liability arises under this tort "when an employer has a legal duty arising out of the relationship between the employment in question and the particular plaintiff, which is owed to the plaintiff if he or she is in the zone of foreseeable risks created by the employment." *Storm v. Town of Ponce Inlet*, 866 So.2d at 717.

In the instant case, the Plaintiffs allege that the actions of DCF in failing to train and supervise its employees in their investigation of child abuse cases caused John Sansbury to lose custody of his children. The causation element is weak at best. The Plaintiffs have shown that DCF has a duty to investigate child abuse cases, however, whether their allegedly faulty investigations led to the loss of custody of John Sansbury has been alleged, but has little factual support. Even though the element of causation is weak, the Court will continue with its analysis of sovereign immunity.

Next, the Court must determine if sovereign immunity is waived based upon the particular facts of the case. To determine if sovereign immunity is waived pursuant to Fla. Stat. §768.28, the Court must determine if the governmental agency's actions were planning versus operational functions. *Department of Health and Rehabilitative Services v. T.R. and Y.H*, 847 So.2d 981, 982 (Fla. 3d DCA 2003). If the governmental function is a discretionary governmental function or judgment function, then governmental agency is immune from suit. *Id*. If, however, the governmental function is an operational function, then sovereign immunity is waived. *Id*. The analysis must be done on a case-by-case basis. *Department of Health and Rehabilitative Services v. Yamuni*, 529 So.2d 258, 259 (Fla. 1988). To determine if the governmental function is an exception to the waiver of sovereign immunity, the Florida Supreme Court adopted a test which is comprised of four preliminary questions:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act or omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Id.* at 259-260. If these preliminary questions can be answered affirmatively, then the governmental function "is probably a policy-making, planning or judgmental activity which is immune from tort liability. If the answer to any of the questions is no, the activity is probably operational level which is not immune." *Id.* at 260. Further, sovereign immunity is waived if the issue is the manner in which the policies are implemented. *Ingram v. Wylie*, 875 So.2d 680, 682 (Fla. 1st DCA 2004).

Florida courts have found that there is no sovereign immunity barrier for a claim against a governmental agency for negligent retention or supervision. *Slonin v. City of West Palm Beach, Florida*, 896 So.2d 882, 884 (Fla. 4th DCA 2005). A Florida court has held that the decision whether to hire, fire or retain an executive employee is discretionary, however, the decision whether to hire retain or supervise general employees is operational. *Storm*, 866 So.2d at 718-719. The decision in the instant case involved child protection investigators, not executives. Therefore, sovereign immunity is waived as to the allegations raised. The Court recommends that the Motion to Dismiss be denied as to Thirteenth, Fourteenth, and Fifteenth Causes of Action against DCF.

### C. Claims Against Szyreck, Sansiveri, and Eddings for Intentional Misrepresentation

The Plaintiffs allege in Causes of Action One through Twelve that Szyreck, Sansiveri, and Eddings made intentional misrepresentations in their reports which caused John Sansbury to lose

custody of his minor children. Szyreck, Sansiveri, and Eddings argue that they are immune from suit based upon the doctrine of sovereign immunity. Pursuant to Fla. Stat. §768.28(9)(a),

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

If the employee is within the scope of employment, then the only remedy is to bring an action against the governmental entity or the head of the agency. Fla. Stat. §768.28(9)(a). The state and its subdivisions are not liable for a tort when the employee is acting outside the scope of his or her employment or if the act is committed in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.*

In the instant case, the Plaintiffs allege in the Second Amended Complaint that Sansiveri, Szyreck, and Eddings were operating under color of state law and in their capacity as child protective investigators, and there are no allegations that they were not acting within the scope of their employment as child protective investigators. (*See*, Com. ¶¶3-5). The Plaintiffs do allege Sansiveri's, Szyrck's, and Eddings' actions were malicious and willful in their intentional misrepresentation concerning their investigations. If an employee is acting with malicious purpose, then the state and its subdivisions are not liable. *See*, Fla. Stat. §768.29(9)(a). Therefore, sovereign immunity does not apply to Sansiveri, Szyreck, and Eddings in One through Twelve Causes of Action and the Court recommends that the Motion to Dismiss be denied as to these claims.

### III. Mary Soth

The Court reviewed the file and did not find a Return of Service for Mary Soth, nor any documents filed on behalf of Mary Soth. Pursuant to Fed. R. Civ. P. 4(m), a district court may dismiss

an action as to a defendant on its own motion if service is not perfected within 120 days after the filing of the complaint. This matter is clearly subject to dismissal as to Mary Soth pursuant to the 120-day provision of Rule 4(m).

### IV. Conclusion

The Court respectfully recommends the following:

1) The Motion to Dismiss be granted as to the Sixteenth through Twenty-Fourth Causes of Action (the federal causes of action) based upon qualified immunity.

2) The Motion to Dismiss be granted as to the Tenth through Twelfth Causes of Action against Mary Soth, and Mary Soth be dismissed from this case.

3) The District Court not retain supplemental jurisdiction over the state law claims.

4) If the District Court retains supplemental jurisdiction, then this Court respectfully recommends that the Motion to Dismiss be denied as to First through Ninth Causes of Action and the Thirteen through Fifteenth Causes of Action.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this 12th day of October 2006.

Copies:

All Parties of Record

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE